# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | |
|---|---|
| KEAH WALKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:16-cv-00150-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security § | |
| Administration, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER

Plaintiff Keah Walker ("Walker") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Walker filed an application for disability insurance benefits and supplemental security income on December 3, 2014, alleging a disability onset date of November 30, 2014. Transcript ("Tr.") 185–98. She later amended that onset date to January 8, 2015. Tr. 45. She listed her disabling medical conditions as insomnia, bipolar disorder, anxiety, and nerves/itching. Tr. 235. The Commissioner denied her application initially in March 2015, and on reconsideration on July 17, 2015. Tr. 24, 85, 115. Walker requested a hearing, which was held before Administrative Law

Judge ("ALJ") Kim D. Parrish on February 24, 2016. Tr. 24. Present at the hearing were Walker, her prior attorney, and David Don Couch, an impartial vocational expert ("VE"). *Id.* The ALJ issued his decision on March 29, 2016, finding that Walker was not disabled. Tr. 23.

In his decision, the ALJ employed the statutory five-step analysis. At step one, he found that Walker had not engaged in substantial gainful activity since January 8, 2015, the amended onset date. Tr. 26, Finding 2. At step two, the ALJ determined that Walker had the following severe impairments: major depressive disorder, bipolar disorder, and borderline intellectual functioning. *Id.*, Finding 3. At step three, the ALJ found that Walker did not have an impairment or a combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P. Tr. 27, Finding 4. In particular, the ALJ concluded that Walker had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the nonexertional limitations of one- or two-step tasks, employment in a low-stress job with only occasional decision-making required and a relaxed or flexible production rate, and only occasional interaction with the public, co-workers, and supervisors. Tr. 28, Finding 5. At step four, the ALJ found that Walker was unable to perform any past relevant work. Tr. 34, Finding 6. And at step five, the ALJ found that there existed a significant number of jobs in the national economy that Walker could perform. Tr. 35, Finding 10. In particular, the ALJ noted the jobs of floor waxer, industrial sweeper, and hand packager, based on the testimony of the VE. *Id*. As a result of the five-step analysis, the ALJ found that Walker had not been under a disability since January 8, 2015. Tr. 23, Finding 10.

The Appeals Council denied Walker's request for review on August 17, 2016. Tr. 6–12. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the

Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II. FACTUAL BACKGROUND

Walker was born on November 3, 1991, and was twenty-three years old on the alleged disability onset date. Tr. 34. She has a high-school education. Tr. 35. Walker has past work experience as a server, a groundskeeper, a mess attendant, and a dietary aide. Tr. 56.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to obtain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20

C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove [she] in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts

in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.  ANALYSIS

Walker raises three issues on appeal. First, she argues that the ALJ did not fairly and fully develop the record because he did not order IQ testing. Second, she argues that the ALJ did not include all of Walker's found limitations, specifically a production rate limitation, in his hypothetical question to the VE. Third, she argues that the ALJ erroneously relied on the VE testimony because it was based on the allegedly invalid Dictionary of Occupational Titles.

### A.  Failure to Develop the Record by Not Ordering IQ Testing

An ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits." *Carey*, 230 F.3d at 142 (citing *Brock v. Chater*, 84 F.3d 726 (5th Cir.1996)). An ALJ's failure to fully and fairly develop the record is only a basis for reversal if "the claimant shows that he or she was prejudiced by the ALJ's failure." *Id.* "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Id.* (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). At step three of the five-step process, the claimant has the burden to prove that her impairment or combination of impairments meets or is equivalent to a listed impairment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).

Mental retardation is a listed impairment requiring a finding of disability. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. According to the Listing current at the time the ALJ made his decision, the required level of severity for this disorder is met where there is:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

*Id.* (effective through January 16, 2017); *see also Smith v. Apfel*, 154 F. Supp. 2d 954, 958 (W.D. Tex. 2001) (holding that social security regulations are not retroactive). A finding of borderline intellectual functioning does not fit within the listed impairment of mental retardation. *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam). While mental retardation constitutes a non-exertional impairment, below-average intelligence alone does not. *Arce v. Barnhart*, 185 Fed. App'x 437, 439 (5th Cir. 2006).

In *Anderson v. Colvin*, a district court considered whether to remand based on the "ALJ's failure to obtain additional testing for intellectual functioning," based on a recommendation by the doctor who conducted the consultative recommendation. Civ. A. No. 4:13-1622, 2014 WL 1052442, at *6 (S.D. Tex. Mar. 18, 2014). The court upheld the ALJ's decision, noting that the claimant had not demonstrated the ALJ's failure to obtain testing prejudiced the claimant. *Id.* The court also noted that the claimant, represented by her prior counsel, neither requested IQ testing nor submitted any testing results herself. *Id.*

Walker did not allege mental retardation as a disability in her case, only insomnia, bipolar disorder, anxiety, and nerves/itching. Tr. 35. The record shows that Walker was in special education classes in school and had limited or borderline intellectual functioning. Tr. 47, 331, 360.

Her medical records list her intellectual functioning as "below average" and state that it is unclear if she has had a mental retardation diagnosis. Tr. 339, 348, 358, 369, 378, 400, 405. Walker's attorney at the hearing said that "if we can get this done on step five today, Your Honor, it might be appropriate to send the claimant out for an IQ test," though he did not later request that IQ testing be done. Tr. 47.

Though Walker did not allege a mental retardation disability, the ALJ extensively analyzed a potential mental impairment according to Listing 12.05 in his opinion. Tr. 27–28. He noted first that paragraph A of the Listing was not satisfied because Walker takes care of her personal needs. Tr. 28. The ALJ found that paragraphs B and C of the Listing were not satisfied because Walker does not have an IQ of 70 or less, basing his finding on the lack of IQ testing and her diagnosis of borderline intellectual functioning. *Id.*; *see Hughes v. Colvin*, Civ. A. No. 3:14CV230 DPJ-FKB, 2015 WL 4430965, at *4 (S.D. Miss. July 17, 2015) ("As to the B and C criteria, the ALJ correctly determined that [the claimant] did not meet them because she does not have valid IQ testing results in the required ranges."). The ALJ found that paragraph D of the listing was not satisfied because she had only moderate restrictions on her daily living; social functioning; and concentration, persistence, or pace; as well as only one to two episodes of decompensation. Tr. 27–28.

The burden at step three is on the claimant to show that she has one of the listed impairments. *Greenspan*, 38 F.3d at 236. Walker's only medical diagnosis regarding her intelligence is that she had borderline intellectual functioning, which is contrary to a finding of mental retardation. *Domingue*, 388 F.3d at 463. The ALJ extensively considered the record and Walker's abilities, social interaction, and past work when deciding that she did not satisfy the requirements of Listing 12.05.

While Walker's prior attorney briefly raised the possibility of IQ testing, she did not request testing or submit testing to the ALJ. And Walker does not now offer any IQ testing results that the ALJ's determination was incorrect or that she was prejudiced by the lack of IQ testing in her case. The only evidence in the record that is consistent with mental retardation is also consistent with borderline intellectual functioning, and the record also contains a diagnosis of borderline intellectual functioning, which is inconsistent with mental retardation. As in *Anderson*, any failure here was the claimant's, who could have satisfied her burden by requesting IQ testing or providing her own results at any time. This ground does not require remand.

**B.     Alleged Invalidity of the Hypothetical Question to the VE**

A hypothetical question posed to a VE is not defective if (1) the hypothetical question reasonably incorporates all disabilities of the claimant recognized by the ALJ, and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). "Both conditions must be met in order to avoid reversible error." *Wanzer v. Colvin*, Civ. A. No. 4:15-CV-003-Y-BL, 2016 WL 7742739, at *7 (N.D. Tex. Feb. 9, 2016), *report and recommendation adopted*, Civ. A. No. 4:15-CV-003-Y, 2016 WL 7735226 (N.D. Tex. Mar. 11, 2016), *aff'd*, 670 Fed. App'x 280 (5th Cir. 2016). If the ALJ relies on testimony elicited by a defective hypothetical question, then the ALJ does not carry his burden to show that the claimant can perform available work despite the claimant's impairments. *Boyd*, 239 F.3d at 708. The claimant need not show prejudice because a defective hypothetical question is reversible error. *Guillen v. Astrue*, 584 F. Supp. 2d 930, 936 (W.D. Tex. 2008); *Singleton v. Colvin*, No. 2:15-CV-

0268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016); *Orosco v. Comm'r of Soc. Sec. Admin.*, 171 F. Supp. 3d 539, 544 (E.D. Tex. 2016)

The ALJ found in his opinion that Walker had the RFC to perform a full range of work at all exertional levels but with the nonexertional limitations of one- or two-step tasks, employment in a low-stress job with only occasional decision-making required and relaxed or flexible production rate, and only occasional interaction with the public, co-workers, and supervisors. Tr. 28. By contrast, when asking the VE about a hypothetical individual with Walker's RFC, the ALJ asked about a person limited to one- and two-step tasks, occasional decision-making, "occasional changes in work stay," and occasional interaction with the public, co-workers, and supervisors. Tr. 56–57. What "work stay" is is not clear: the term is not explained elsewhere in the record, and a search for "work stay" on Westlaw turns up no case results in the Fifth Circuit. The ALJ's second hypothetical kept the same vocational factors as his first, except that the hypothetical worker would possess an approximate twenty-percent reduction in concentration capability. Tr. 58. The ALJ did not mention production rate in his questions to the VE. *See* Tr. 56–58. The ALJ relied on the VE's testimony in making his determination that Walker could perform existing jobs and was therefore not disabled. Tr. 35.

Walker argues under the *Bowling* test that the ALJ's hypothetical was defective because it did not include a requirement of a flexible or relaxed production rate, and because Walker's counsel did not have the opportunity to correct deficiencies in the question. ECF No. 21 at 10–11. The latter concern is plainly incorrect, as Walker's prior attorney was able to and did question the VE on other matters. Tr. 58–59. However, based on the record, it does not appear that the ALJ included production-rate limitations in his question to the VE. *See* Tr. 56–57. The Commissioner argues that the *Bowling* test is satisfied because Walker's attorney cross-examined the VE, but the

test requires both prongs to be satisfied for the question not to be defective. *See* ECF No. 22 at 12; *Wanzer*, Civ. A. No. 4:15-CV-003-Y-BL, 2016 WL 7742739, at *7. The Commissioner additionally argues that it is Walker's own failure that her counsel did not ask the VE about the production-rate requirement, but it is the ALJ's job to develop the record and it is the ALJ's burden at step five to ensure that substantial evidence supports his decision. *Carey*, 230 F.3d at 142; *Audler*, 501 F.3d at 448. The Commissioner finally argues that Walker must show prejudice arising from the hypothetical question's omission of the production-rate requirement, but a defective hypothetical question is reversible error for which the claimant need not make a showing of prejudice. *E.g. Guillen*, 584 F. Supp. 2d at 936. Because the hypothetical question did not reasonably incorporate all disabilities of the claimant recognized by the ALJ, the question is defective and remand is required. *Boyd*, 239 F.3d at 708.

### C. Alleged Invalidity of the Dictionary of Occupational Titles

Walker challenges the ALJ's step-five determination on the grounds that the ALJ relied on the VE, who used the Dictionary of Occupational Titles ("DOT") to determine that jobs for Walker existed in significant numbers in the national economy. ECF No. 21 at 11. Walker argues that the DOT is outdated and O*NET, the Department of Labor's currently used source for occupational information, shows that the jobs identified by the VE have training requirements that are greater than the limitations the ALJ assessed for Walker. *Id.* at 12–13. Indeed, the edition to which the Commissioner cites is from 1991. ECF No. 22 at 14.

Whether the DOT is outdated is not a determination this Court can make. The Regulations explicitly allow the ALJ to use the DOT. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Use of the DOT is widespread in Social Security cases in all circuits of the federal judiciary. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (collecting the positions of the circuit courts on the

amount of authority accorded to the DOT against contrary VE testimony); *Hernandez v. Astrue*, No. A-06-CA-416 LY, 2007 WL 1746896, at *3 (W.D. Tex. June 15, 2007) (referring to the DOT as "the standard reference guide"); *Gillespie v. Astrue*, No. 1:13-CV-00219, 2014 WL 1168872, at *11 (W.D. La. Mar. 21, 2014) ("VEs typically use the Dictionary of Occupational Titles published by the Department of Labor, the Standard Occupational Classification system published by the Department of Labor, and census reports published by the Bureau of Census. . . ."). "O*Net has not been designated as an acceptable source under Social Security Regulations, and the court is not at liberty to substitute its judgment for those regulations." *New v. Comm'r of SSA*, Civ. A. No. 4:13-CV-0013-SAA, 2014 WL 7361602, at *9 (N.D. Miss. Dec. 23, 2014). The Department of Labor does not enforce the Social Security program. *Id.*

Walker argues that O*Net shows that the three jobs selected by ALJ have greater training requirements than Walker was capable of, according to the limitations the ALJ assessed for her. ECF No. 21 at 12–13. According to the DOT, these jobs have a specific vocational preparation level ("SVP") of 2. *Id.* at 12. But according to O*Net, they have an SVP of "4 to less than 6," an SVP that, according to Walker, conflicts with the ALJ's assessed limitation. *Id.* at 12–13. Walker had the opportunity at her hearing, through her attorney, to challenge the VE on cross-examination as to whether she could perform those occupations. Her attorney cross-examined the VE only on how many breaks and absences she could take in the suggested jobs, not whether the SVP was too low for those jobs or whether training made her unable to perform those jobs. Tr. 58–60. This Court's task is not to reweigh the evidence but to decide whether substantial evidence supported the ALJ's decision. *Hollis*, 837 F.2d at 1383. The ALJ relied on the testimony of the VE, based on the DOT, as is the standard practice. This ground does not require remand.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **January 2, 2018** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed December 19, 2017.

                                                                     Hal R. Ray, Jr.
                                                                     UNITED STATES MAGISTRATE JUDGE